IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF WEST BRIDGEWATER<br><br>Plaintiff,<br>v.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); ANGUS FIRE; AGC CHEMICAL AMERICAS, INC.; AGC INC. F/K/A ASAHI GLASS CO.; ARCHROMA MANAGEMENT LLC; ARCHROMA US, INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE PROTECTION CO.; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD CHEMICALS INC.; CHUBB FIRE, LTD.; CLARIANT CORP.; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DUPONT DE NEMOURS, INC.; DYNAX CORP.; E.I. DU PONT DE NEMOURS & COMPANY; KIDDE-FENWAL, INC.; KIDDE PLC INC.; NATIONAL FOAM, INC.; NATION FORD CHEMICAL COMPANY; RAYTHEON TECHNOLOGIES CORPORATION F/K/A UNITED TECHNOLOGIES CORPORATION; THE ANSUL COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; TYCO FIRE PRODUCTS, LP; AND UTC FIRE & SECURITY AMERICAS CORPORATION,<br><br>Defendants. | Case No.<br><br>NOTICE OF REMOVAL<br><br>JURY TRIAL DEMANDED |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of Plymouth County, Massachusetts to the United States District Court for the District of

Massachusetts.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status, and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges was used at a fire department and other sites, for fire-training and fire-fighting activities in the vicinity of the Town of West Bridgewater, Massachusetts, thereby resulting in contamination of its water supplies, water infrastructure, and other resources and properties.

2.      Specifically, Plaintiff alleges that Defendants' AFFF products contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanesulfonic acid ("PFOS") and/or perfluorooctanoic acid ("PFOA") and/or their chemical precursors, and that the use of these products has caused contamination to the Town of West Bridgewater's wells, water sources and supply, and water supply and delivery system infrastructure, including any treatment systems.

3.      At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").   Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the

Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.     This action was filed on July 13, 2022, in the Superior Court of Plymouth County, bearing Case No. 2283CV00504.  (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. § 101 because the Superior Court of Plymouth County, Massachusetts is located within the single judicial district of Massachusetts.

5.     Tyco Fire Products LP and Chemguard, Inc. were served, respectively, on or about September 8, 2022 and August 26, 2022 with the Complaint.  Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

6.     Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

7.     Plaintiff generally alleges that Defendants, including Tyco, designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFAS, including PFOS and/or PFOA and/or their chemical precursors.  (Compl. ¶ 5).  Further, Plaintiff alleges that the AFFF designed, manufactured, marketed and/or sold by Defendants, due to the use of AFFF in firefighting activities in and around the Town of West Bridgewater has caused contamination of Plaintiff's water supplies. (*Id.* ¶¶ 5–12).

8.     Plaintiff seeks damages incurred for all "past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment" from alleged PFAS

contamination of Plaintiff's property.  (*Id.* ¶ 9).  Plaintiff also seeks other damages and relief.  (*Id.* ¶ 9; Prayer for Relief at 26–27).

9.      Plaintiff asserts claims against all Defendants for breach of implied warranty of merchantability – defective design (*Id.* ¶¶ 88–103); breach of implied warranty of merchantability – failure to warn (*Id.* ¶¶ 104–11); negligence (*Id.* ¶¶ 112–17); and trespass (*Id.* ¶¶ 118–23). Additionally, Plaintiff asserts a claim for fraudulent transfer against Defendants E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, and DuPont De Nemours, Inc.  (*Id.* ¶¶ 124–34).

10.      Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Superior Court of Plymouth County, Massachusetts.

11.      By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.      Tyco reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442

13.      Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a

"colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D.Mass.2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against

Tyco and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found, on multiple occasions, that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings demonstrate that this case, too, is properly removed to federal court.[1]

A.    **MilSpec AFFF**

16.    Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

17.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019, the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use

---

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."
PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and
the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS
(subject to recently imposed limits).

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

        *1.     The "Person" Requirement Is Satisfied*

19.     The first requirement for removal under the federal officer removal statute is
satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and
corporation, respectively) meet the definition of "persons" under the statute.  For purposes of §
1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and]
partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607
F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

        *2.     The "Acting Under" Requirement Is Satisfied*

20.     The second requirement ("acting under" a federal officer) is satisfied when an entity
assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  The
phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*,
860 F.3d at 255 (internal quotation marks omitted).  Federal courts "have explicitly rejected the
notion that a defendant could only be 'acting under' a federal officer if the complained of conduct
was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.  Rather,
"courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor

seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original).

21.     The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself.  *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5; MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

22.     In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.     *The Nexus Requirement Is Satisfied*

23.     The third requirement, that the defendant's actions taken under color of federal office have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low."  *Isaacson*, 517 F.3d at 137.[9]  To show the required nexus, it is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office.  *Sawyer*, 860 F.3d at 258.

24.     Here, Plaintiff's claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications.  Plaintiff alleges that the use of PFAS in AFFF is a source of its injuries.  Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet specifications established by the DoD.  The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509;

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

*see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards.  The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

25.     Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF.  The causal connection or relationship between Plaintiff's alleged injuries and Tyco's actions under color of federal office is clear.  It is irrelevant that the Complaint does not expressly contend that Plaintiff has been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     *The "Colorable Federal Defense" Requirement Is Satisfied*

26.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

27.     At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To

be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[10] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

28.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

29.     Tyco has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at \*13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at \*4.

30.     Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[11]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

environmentally."[12]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[13]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[14]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense

---

[12] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[13] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[14] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

31.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

32.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

*     *     *

WHEREFORE, Tyco hereby removes this action from the Plymouth County Superior Court to the United States District Court for the District of Massachusetts.

[signature block – next page]

Dated:  September 13, 2022                    Respectfully submitted,


                                             */s/Jessica C. Jeffrey*
                                             Jessica C. Jeffrey (BBO No. 687683)
                                             Nelson Mullins Riley and Scarborough LLP
                                             One Financial Center, Suite 3500
                                             Boston, MA 02111
                                             Tel: 617-217-4700
                                             Fax: 617-217-4710
                                             Email:  Jessica.Jeffrey@nelsonmullins.com

                                             *Attorney for Defendants Tyco Fire Products LP and
                                             Chemguard, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 13th day of September, 2022, I electronically filed the foregoing with the Court using the CM/ECF system, and served same via the CM/ECF system.  There are no pro se parties.

*/s/Jessica C. Jeffrey*